**Gilbert Raul URBANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00674–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 27, 1988.

**34**

Troy McKinney, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Carol Cameron, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

OPINION ON REHEARING

SAM BASS, Justice.

In consideration of appellant's second motion for rehearing, we withdraw our opinion of August 25, 1988, and substitute this one in its place.

A jury found appellant guilty of aggravated robbery. The jury then assessed punishment at 99 years confinement.

We affirm in part and reverse and remand in part.

Appellant does not contest the sufficiency of the evidence. In his first point of error, appellant contends that the trial court erred in granting the State's motion to shuffle the names of the jury panel, pursuant to Tex.Code Crim.P.Ann. art. 35.11 (Vernon 1966). Appellant's specific complaint is that the trial court erred in granting the State's motion to shuffle because the venire already had been shuffled once.

■ The State responds initially by raising the question of whether appellant objected timely and specifically. Appellant objected prior to both the trial court's preliminary comments to the venire and voir dire. We hold that this properly preserved error for review on appeal. *See Williams v. State,* 719 S.W.2d 573, 577 (Tex.Crim. App.1986); *Sewell v. State,* 696 S.W.2d 559, 561 (Tex.Crim.App.1983).

■ Addressing the merits of appellant's argument, we note that article 35.11 does not expressly limit the trial court to granting only one shuffle per case. Rather, the statute mandates that upon demand of the defendant, his counsel, or the State, the trial judge shall shuffle the names of the jurors on the panel. *Williams v. State,* 719 S.W.2d at 574. We note further that the statute imparts this right *equally* to the defense and State—each has the same, absolute right to a timely demanded shuffle. *See Davis v. State,* 573 S.W.2d 780, 781 (Tex.Crim.App.1978) (defendant's right to shuffle); *Overton v. State,* 490 S.W.2d 556, 558 (Tex.Crim.App.1973) (State's right to shuffle).

Appellant cites *Fontenot v. State,* 379 S.W.2d 334, 334–335 (Tex.Crim.App.1964), for the proposition that it is error for a court to allow more than one shuffle. In *Fontenot,* the Court of Criminal Appeals, in its majority opinion, held that the trial court erred in "allowing the State a second shuffle." *Id.* at 334.

■ We note that the existing caselaw on this issue appears to be conflicting. A reading of both the majority opinion and the dissent on rehearing in *Fontenot* indicates that, on facts identical to that of the instant case, the Court of Criminal Appeals: (1) held the trial court erred in granting a second shuffle; and (2) required no showing of harm. The more recent case of *Stark v. State,* 643 S.W.2d 187, 189 (Tex.App.—Austin 1982) (*"Stark I"*), *rev'd,* 657 S.W.2d 115 (Tex.Crim.App.1983) (*"Stark II"*), however, appears to have arrived at a different conclusion.

In *Stark II,* the Court of Criminal Appeals focused principally on the question of the propriety of the Travis County court practice of requiring a defendant to attend a courtroom different from that in which he will be tried, in order to observe a jury panel before he makes a decision about demanding a shuffle.

Because of the Court of Criminal Appeals' focus on the issue of the location of the shuffle, appellant contends that the court approved, *sub silentio,* the language in *Stark I* to the effect that the article 35.11 allowed for only one shuffle per case. Appellant's reasoning, however, is contradicted by the Court of Criminal Appeals' express language in *Stark II.* The defendant in *Stark (I* and *II)* argued on appeal that he was "automatically entitled" to a shuffle, regardless of the State's prior shuffle.

In *Stark II,* the Court of Criminal Appeals stated, in response to this argument, "Appellant's interpretation of the statute is correct. The statute 'gives the defendant an absolute right to have the jury shuffled.'" (Citations omitted.) The court then continued, "The statute *also* contemplates that court business will be conducted in the courtroom." (Emphasis added.) The term "also" indicates that the court agreed with both of the defendant's arguments.

The result of *Stark II* is that, even if the State has requested and received a shuffle, with which it is satisfied, the defendant still is statutorily entitled to a shuffle; therefore, because both the defendant and the State are equally entitled to the rights provided by article 35.11, the inverse of *Stark II* applies to the instant case: if a

defendant requests and receives a shuffle with which he is satisfied, the State still is entitled to its own shuffle.

This interpretation of *Stark II* is supported by other Court of Criminal Appeals decisions that have recognized a defendant's right to a shuffle, regardless of previous shuffles: *Sewell v. State*, 696 S.W.2d at 561 n. 1 (accused is entitled to timely requested shuffle, regardless of trial judge's *sua sponte* shuffle) (see cases cited therein); *Wilkerson v. State*, 681 S.W.2d 29, 30 (Tex.Crim.App.1984) (*sua sponte* shuffle of a jury panel by the trial judge does not foreclose the right of the State and defendant to a timely requested shuffle); *Yanez v. State*, 677 S.W.2d 62, 65 (Tex.Crim.App.1984) (even though trial court already had jury panel shuffled, it was error to deny the defendant's timely motion); *Latham v. State*, 656 S.W.2d 478, 480 (Tex.Crim.App.1983) (even though panel already had been shuffled twice out of courtroom [unclear whether by *sua sponte* decision of trial court or upon request of State], trial court erred in refusing request of defendants to shuffle in courtroom); and *Smith v. State*, 648 S.W.2d 695 (Tex.Crim. App.1983) (holding that a defendant is entitled to a shuffle "regardless of the manner in which the jury was originally assigned by the clerk").

Appellant does not mention *Contreras v. State*, 733 S.W.2d 646, 648 (Tex.App.—San Antonio 1987, no pet.). In *Contreras*, the San Antonio Court of Appeals held that article 35.11 provides for only one shuffle per case based upon the timely request of one or more of the three statutorily-designated movants. The San Antonio Court distinguished *Wilkerson v. State*, 681 S.W. 2d at 30, and *Sewell v. State*, 696 S.W.2d at 561 n. 1, on the basis that the trial court in those cases *sua sponte* ordered a shuffle, and because the trial court is not listed in article 35.11 as one of the three entitled movants, the shuffle mandated by article 35.11 did not occur. The San Antonio Court asserted that the following language in the Special Commentary to article 35.11 strengthened its decision. The Special Commentary reads:

This article provides that upon demand of either party the trial judge shall cause the names of jurors in such case placed in a receptacle shaken, drawn and listed in order drawn.

The San Antonio Court said, "It can be seen the article contemplates one request to be sufficient to cause the shuffle.... The statute mandates one shuffle based upon the timely request of one of the three listed qualified movants, or it may be based upon separate timely requests of two or three of them." *Contreras v. State*, 733 S.W.2d at 648.

We disagree with the *Contreras* holding for the reasons stated in our analysis of *Stark II*, above, and because the language in the Special Commentary (on which the San Antonio Court relied) also can be read to mean that when either party requests a shuffle, the trial court must grant that party a shuffle.

We overrule the first point of error.

In his second point of error, appellant contends that the trial court erred in considering and granting the State's motion to shuffle without notice to either appellant or his counsel and outside of their presence. Before voir dire, appellant learned that the trial court had granted the State a shuffle, despite the fact that the court already had granted appellant a shuffle. However, although appellant timely objected to the second shuffle, he failed to raise a specific objection to the court's alleged *ex parte* hearing of the State's motion to shuffle, until after voir dire was completed.

■ It is well-established that objections concerning motions to shuffle must be made timely or they are waived. *Williams v. State*, 719 S.W.2d at 575. To be timely, the motion must be presented or urged prior to the commencement of the voir dire examination of the jury panel assigned to the case. *Id.* ( *see* cases cited therein.); *see also Cravens v. State*, 687 S.W.2d 748, 752 (Tex.Crim.App.1985) (a point of error must comport with the objection made at trial).

■ Although appellant did make one objection timely (that it was error to grant the State a shuffle after appellant already

had received his shuffle), the objection stated in this point of error (that it was error to consider and grant a shuffle without notice to appellant, as well as outside his presence) was not raised prior to voir dire. Thus, only his first objection can be considered on appeal as properly preserved.

 Furthermore, even were we to consider appellant's point of error, we would find it to be without merit. Appellant must make an actual showing of injury, or facts from which injury might reasonably be inferred, to complain of proceedings made out of his presence. *Cooper v. State*, 631 S.W.2d 508, 511–12 (Tex.Crim. App.1982); *Mares v. State*, 571 S.W.2d 303, 307 (Tex.Crim.App.1978); *Cartwright v. State*, 96 Tex.Crim. 230, 259 S.W. 1085 (1924). An interaction between the trial court and the State, out of the presence of the defendant and his counsel, cannot harm the defendant unless his presence bore a reasonably substantial relationship to the opportunity to defend. *Mares v. State*, 571 S.W.2d at 307.

We overrule the second point of error.

In his third point of error, appellant contends that the prosecutor committed reversible error by discussing "victims' rights" during argument at the punishment phase of the trial, and by asking the jury to punish appellant because of the existence, and possible exercise, of his constitutional rights. The objectionable portion of the State's final argument was as follows: "On August 9, 1978, he murdered another human being. That person will never get an appeal. That person will never get his or her day in court. That's over and done with." The State made this argument during the punishment stage of the trial, and was alluding to a prior conviction because of which the conviction in the instant case would be enhanced.

 Appellant did not object to this portion of the State's argument. Generally, a complaint about any improper argument made by the State is waived by the defendant's failure to make a proper and timely objection. *Landry v. State*, 706 S.W.2d 105, 111 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167

(1986). An exception to this rule exists when an argument is so prejudicial that, had the defendant objected, an instruction would not have cured the harm. *Id.* Obviously, this exception applies only if the argument was improper; therefore, before we attempt to determine the degree of harm caused by the comment in controversy, we first must determine whether the comment was improper.

 It is well-settled that permissible jury argument must fall within four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973). During jury argument, the State may draw from the facts in evidence all inferences that are reasonable, fair, and legitimate, and will be afforded great latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith. *Griffin v. State*, 554 S.W.2d 688, 690 (Tex.Crim.App.1977).

 The record reflects that prior to the instant case, the appellant was convicted of murder and received a 20–year sentence. This prior conviction was in evidence for enhancement purposes; indeed, appellant pleaded true to all enhancement allegations. The prosecutor's passing remark did not refer directly to the likelihood that appellant would appeal. *See, e.g., Stone v. State*, 751 S.W.2d 579, 586 (Tex. App.—Houston [1st Dist.] 1988, pet. pending) (op. on reh'g). Rather, given the remark's context, the prosecution directed the jury's attention to the fact that appellant previously had taken a person's life. Because appellant's conviction was to be enhanced, this was a proper reminder to the jury to consider prior convictions in determining his sentence—in other words, this was a plea for law enforcement.

 Even had the remark been improper, it is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts

harmful to the accused into the trial proceeding. *Matthews v. State,* 635 S.W.2d 532, 539 (Tex.Crim.App.1982); *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Crim.App. 1980). Assuming the remark to have been improper, it does not fall into any of these four categories. Therefore, we ascertain no harm warranting reversal.

We overrule the third point of error.

In his fourth and final point of error, appellant contends that the trial court's error in charging the jury on the law of parole caused harm warranting reversal. *See Rose v. State ("Rose I"),* 752 S.W.2d 529 (Tex.Crim.App.1987) (holding that Tex. Code Crim.P. Ann. art. 37.07, sec. 4(a) (Vernon Supp.1988) ("the parole statute"), requiring that the trial court instruct the jury on the Texas parole laws, is unconstitutional). After the parties in the instant cause submitted their briefs, the Court of Criminal Appeals published its opinion on rehearing, *Rose v. State ("Rose II"),* 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g).

▆ *Rose II* instructs that, in determining harm due to an improper charging instruction on parole law, rule 81(b)(2) applies. Tex.R.App.P. 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines *beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.*

(Emphasis added.) Because of its "beyond a reasonable doubt" language, we interpret rule 81(b)(2) as placing the burden of proof upon the State to demonstrate that appellant suffered no harm in trial court proceedings. *See Taylor v. State,* 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.] 1988, pet. pending).

The State must demonstrate "beyond a reasonable doubt" that an unconstitutional parole instruction made "no contribution" to the jury's determination of punishment if the decision is to be affirmed. We have interpreted this language to mean that, in considering error in the form of an unconstitutional parole instruction, the contribu-

tion forbidden by rule 81(b)(2) is defined as *a contribution about which an appellate court would have a reasonable doubt concerning its effect upon a conviction or punishment. Id.,* at 551. In other words, unless the State is able to persuade an appellate court "beyond reasonable doubt" that the parole instruction error did not affect (*i.e.,* made no contribution to) the jury's decision regarding punishment, we are required to reverse.

▆ In the instant cause, the trial court gave a cautionary instruction, virtually identical to that given by the trial court in *Rose,* informing the jury that they were not to discuss or consider how much of a sentence appellant might actually serve. *Rose II* held this type of instruction created a rebuttable presumption that the jury did not consider the charge. *Rose II,* 752 S.W. 2d at 554.

Looking to the facts of the case, the record reflects that appellant and a co-defendant, armed with guns, robbed a convenience store, but that no one was injured during the robbery. Appellant's parole officer testified to the effect that he was cooperative, particularly in comparison to other parolees she supervised. She testified further that he never caused her any problems.

These facts reflect the commission of a serious crime, made all the more serious because of the use of firearms, but also a crime in which no bodily injury occurred. They indicate further that a State official agreed to endorse appellant's character, to a certain extent. These facts would be likely to persuade a jury to give a lesser sentence unless some other factor (such as an unconstitutional instruction in the charge) caused appellant harm.

Furthermore, and most significantly, during closing argument, the State referred to the fact that appellant only served eight years of a 20–year sentence for his prior murder conviction. The prosecutor also asked the jury to, "Look at page three of the charge also [sic] that talks about good conduct time and parole. Read it. Have the foreman or other person read

it aloud to the jury." Finally, in his rebuttal to appellant's closing argument, the prosecutor argued, after reminding the jury of the page of the charge that referred to the parole law, "*He'll get out some day. You can't stop that.*" (Emphasis added.) At no point did the prosecutor remind the jury not to consider the parole law.

Appellant's counsel also referred to parole several times throughout his closing argument. At no time did he ask the jury not to consider parole. Indeed, at one point he reminded the jury that appellant had not served much of his prior 20–year sentence. Thus, both appellant's counsel and the State raised the issue of parole in their respective closing arguments, in a manner harmful to appellant.

In concluding our analysis, we note that appellant received a sentence of 99 years confinement. The trial court instructed the jury that the maximum punishment possible was 99 years or life. Although appellant did not receive that maximum sentence (life), he did receive the next most severe sentence—99 years. This fact, too, indicates that appellant suffered harm.

It is evident from the record that the presumption of the curative power of the court's instruction not to consider parole has been rebutted. For this reason, we reverse the judgment on the verdict of punishment and remand the matter to the trial court for a new trial on punishment. *See* Tex.Code Crim.P.Ann. art. 44.29(b) (Vernon Supp.1988); *see also Johnson v. State,* 755 S.W.2d 92, 97, n. 10 (Tex.Crim. App.1988).

We sustain the fourth point of error.

We overrule the motion for rehearing and order that the cause be reversed and remanded to the trial court for a new trial on the matter of punishment; in all other respects, we affirm the judgment of the trial court.

DUNN, J., dissents.

DUNN, Justice, dissenting.

I respectfully dissent. I believe this Court should reverse the judgment of the trial court and remand the cause.

In his first point of error, appellant contends that the trial court erred in granting the State's motion to shuffle the names of the jury panel. Appellant argues that this was error because the venire already had been shuffled once.

Article 35.11 mandates that upon demand of the defendant, his counsel, *or* the State, the trial judge shall shuffle the names of the jurors on the panel. *Williams v. State,* 719 S.W.2d 573, 574 (Tex.Crim.App.1986). The statute's phraseology reflects the rule that there be no more than one shuffle in each case. *Contreras v. State,* 733 S.W.2d 646, 648 (Tex.App.—San Antonio, no pet.).

Appellant correctly cites *Fontenot v. State,* 379 S.W.2d 334, 334–35 (Tex.Crim. App.1964), for the proposition that it is error for a court to allow more than one shuffle. In *Fontenot,* the Court of Criminal Appeals held that the trial court erred in allowing the State a shuffle after it already had granted the defendant a shuffle. *Id.* at 336 (Woodley, J., dissenting).

Similarly, the Court of Criminal Appeals has held that the statute does not empower a defendant to repeated shuffles. *Latham v. State,* 656 S.W.2d 478, 481 (Tex.Crim. App.1983); *Smith v. State,* 648 S.W.2d 695, 696 (Tex.Crim.App.1983).

Appellant also cites *Stark v. State,* 643 S.W.2d 187 (Tex.App.—Austin 1982) ("*Stark I*"), *rev'd,* 657 S.W.2d 115 (Tex. Crim.App.1983) ("*Stark II*"). In *Stark I,* the Austin Court of Appeals stated, "It is plain that art. 35.11 contemplates only one shuffle of the jury panel, be it at the request of the State or at the request of one or more of the defendants. The purpose of the jury shuffle is, after all, to insure a random list of jurors. ... That purpose, the random seating of the panel members, may be achieved by one shuffle whether made in response to a motion of the State or the defendant." *Stark I,* 643 S.W.2d at 189.

In *Stark II,* the Court of Criminal Appeals considered two questions on appeal: (1) did the trial court err in granting a second shuffle; and (2) did the trial court

err by requiring the defendant to attend a courtroom, different from that in which he was to be tried, to observe the jury panel before making a decision about demanding a shuffle. *Stark II*, 657 S.W.2d at 116. In overruling the Court of Appeals' decision, the Court of Criminal Appeals stated only that the trial court had erred in requiring the defendant to attend a different courtroom to observe the venire and make his decision about whether to demand a shuffle. *Id.* Therefore, the Court of Criminal Appeals tacitly affirmed the Court of Appeals' holding that the rule in Texas is "one shuffle, one case."

The majority also reasons that in order to show reversible error when a trial court has granted an improper shuffle, an appellant must show harm. I respectfully disagree with this holding. All the case law considering error when a defendant has been denied a shuffle to which he is entitled has concluded that harm need not be shown. *Smith v. State*, 648 S.W.2d at 696.

For these reasons, I believe that we should hold that the trial court erred in granting the State's motion to shuffle after it had already granted such a motion for appellant.

In my opinion, we should sustain the first point of error, reverse the judgment, and remand the cause to the trial court for a new trial.