**Janice Faye WASHINGTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00481–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 6, 1989.

Brian W. Wice, Houston, for appellant.

John B. Holmes Jr., Dist. Atty., J. Harvey Hudson, Roberto Gutierrez, Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

OPINION ON REMAND

EVANS, Chief Justice.

A jury convicted appellant of aggravated robbery and assessed punishment at 50 years confinement. In her appeal, appellant asserted that the parole charge given to the jury pursuant to Tex.Code Crim.P. Ann. art. 37.07, sec. 4,[1] violated the separation of powers doctrine. Upholding the constitutionality of the statute, this Court overruled the points of error. The Texas Court of Criminal Appeals vacated the judgment of this Court and remanded the cause so the point concerning the parole charge may be reconsidered in light of its holding in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987).

In *Rose,* the Texas Court of Criminal Appeals held that article 37.07, section 4 violated the separation of powers and the due course of law provisions of the Texas Constitution. *Rose,* 752 S.W.2d at 552. On its own motion for rehearing, the court then held that when the trial court gives a parole charge, the appellate court must apply the rule 81(b)(2) test to determine whether appellant was harmed. *Id.* at 554; Tex.R.App.P. 81(b)(2). That rule provides:

[i]f the appellate record in a criminal case reveals error in the proceedings below,

---

1. Ch. 576, sec. 1, 1985 Tex.Gen.Laws 2195, *amended by* ch. 66, sec. 1, 1987 Tex.Gen.Laws 170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765.

the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

In making its assessment of harm in *Rose*, the court pointed to a number of different factors in finding the error made no contribution to the punishment assessed: an explanatory charge given to the jury about the parole law; the egregious facts of the case; and the defendant's criminal record. *Rose*, 752 S.W.2d at 554–55. The jury convicted Rose of aggravated robbery and assessed the maximum sentence of life imprisonment.

Here, the jury was presented with overwhelming evidence of a heinous, premeditated crime. The victim of this crime, Mr. Lourie Ford, was 80 years old, and weighed a scant 103 pounds. He lived alone in his small house, next to a church, in the Acres Home addition of Houston. About a week before the robbery, appellant told several acquaintances of her plan to rob Mr. Ford. She said she planned to knock on his door and ask to use his telephone. "Once she got inside," she intended to look around "to see if there was anything" of value. If Mr. Ford put a fight up or struggled with her, "she would kill him." True to her plan, appellant and her co-defendant walked up to Mr. Ford's front door about 10 p.m. on May 8, 1985. She knocked on Mr. Ford's door and asked if she could use his telephone. When Mr. Ford replied in the affirmative, she followed him into the house. Mr. Ford pointed out the telephone to her, and then leaned over to straighten the twisted telephone cord. At that point, appellant raised the bat she had in her hand, and hit Mr. Ford in the back of the neck. Mr. Ford gasped and tried to raise up, but appellant hit him on the top of the head. As he raised his arm to protect himself, she hit him a third time. When Mr. Ford did manage to stand up, appellant swung the bat at him as "if she were hitting a baseball," striking him in the throat and crushing his larynx. Appellant then ransacked Mr. Ford's house, taking his gun and other personal items, some of which she and her co-defendant later sold.

A Harris County Medical Examiner, who had performed the autopsy on Mr. Ford, testified that Mr. Ford's death resulted "from a crushed larynx and acute subdural hemorrhage and cerebral contusions due to blunt trauma." The medical examiner found "multiple lacerations, multiple contusions, multiple stab wounds." He found a laceration on the back of Mr. Ford's head, toward the top of his head, and along the left ear extending to the region of the skull. The cartilage of Mr. Ford's ear was fragmented into multiple parts. There were stab wounds along the left side of his neck, in front of his left ear, and by his lip. There were also two stab wounds on the left side of his neck, and a "through-and-through stab wound at the back of the neck." The medical examiner also found multiple fractured ribs on both sides of the body. The jury was presented with photographs showing the nature and extent of Mr. Ford's injuries.

At the punishment phase of the trial, the trial court charged the jury that the range of punishment for aggravated robbery was confinement for not less than five nor more than 99 years, or life, in addition to a $10,000 fine. The court charged the jury regarding the parole law and good conduct time, but then instructed:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Appellant's trial counsel objected to this portion of the charge, arguing that it deprived his client of her right to have the jury make "a true assessment" of the years she would have to serve.

During the punishment phase of trial, the State called four witnesses who testified that appellant's reputation for being a law abiding citizen was bad. Several of appellant's family testified that they would help her meet any conditions of probation.

Appellant's trial counsel then called the State prosecutor and asked him, among other questions, the following:

Would you explain to the jury the difference between the finding of a deadly weapon as it affects the practicality of the sentence itself?

The prosecutor responded:

Yes, sir. According to new law that allows jurors to hear evidence of what the parole law is all about, there are instructions drawn up by the Court which explain that. If someone is convicted of a serious crime such as aggravated robbery, kidnapping, sexual assault, or any number of different crimes and if there is an affirmative finding that a deadly weapon was used, in order for that person to become eligible for parole, they have to do an automatic one-third of their sentence or twenty years, whatever is less.

In his opening argument, the prosecutor argued that appellant's crime was a "cold-blooded assassination," and not a proper case for probation. Referring to his own testimony, when called by the defense as a witness, he noted that appellant, if sentenced to the penitentiary, would not be eligible for parole until one-third of the sentence had passed. He stated that it would not matter if appellant was sentenced to the penitentiary for life or 99 years, she would become eligible for parole after 20 years. He further stated that under the court's charge, the jury could consider the existence of the parole law, but that it should not consider the law as applied to appellant. He specifically asked the jury, if it did not assess a punishment of life imprisonment, to assess not less than 45 years "because of the facts of the case."

Appellant's trial counsel argued that the jury should consider what it would be like to be sent to prison "for a life sentence, 10 or 30 years." He argued that because of the deadly weapon finding, appellant would be required to serve one-third of any time assessed, "flat," meaning full calendar years. He asserted: "you may rest assured there is no way around that period of time, so the time you assess will be served day by day by day, with no hope until that time has evaporated."

In his closing argument, the prosecutor reiterated the facts of Mr. Ford's death. He noted that,

Mr. Ford was a living and breathing human being. Can you envision what it would take to do something like that? She hits him so hard that she breaks his skull to the point where the medical examiner can peel it off and see his skull. She doesn't stop there, she swings its again and she hits him again. She hits him on the top of his head, then she hits him a third time as he raises his hand. How hard did she have to hit him? Can you imagine how hard? Can you imagine what it sounded like when it hit the skull of Mr. Ford. Think of the horror most of us would feel. Think about standing over someone and breaking someone's skull, his ribs, his back. And then to get a knife and stick him with it, not once, but more than once in the neck. What kind of person does that?

The prosecutor then noted that appellant's trial counsel was asking for a low term of years. He noted the range of punishment, and asserted that it did not matter if the jury assessed 99 years or 65 years, "anything over sixty is just there. If you want her to spend twenty years in the penitentiary before she is eligible for parole, you've got to give her life or sixty years. That's not my doing, that's the Parole Board. That's what life really means." Finally, the prosecutor pleaded for the jury to do justice in the case "and give her life because that's what the evidence calls for."

The jury chose not to assess appellant's punishment at life imprisonment, and instead assessed punishment at 50 years confinement.

The trial court's charge to the jury, which tracks the language of article 37.07, specifically instructs the jury that it is not to consider the manner in which the parole law may be applied to appellant. Although the court did not give an additional explanatory instruction, the court's limiting in-

struction clearly told the jury it could not consider the parole law information in its assessment of appellant's punishment. The limiting instruction was the court's "last word" on the subject of parole, and contrary to appellant's contention, the limiting charge did not conflict with the court's earlier instruction giving general information about the parole law. We therefore presume, in the absence of any rebutting evidence, that the jury followed the court's instructions in the manner presented. *Rose,* 752 S.W.2d at 554; *Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983); *see also Howell v. State,* 757 S.W.2d 513, 517 (Tex.App.—Houston [1st Dist.] 1988, pet. pending).

In assessing appellant's punishment, the jury was entitled to consider the brutal nature of appellant's assault on an elderly and defenseless victim, appellant's premeditated plan to commit a felonious assault and robbery, and appellant's bad reputation in the community. The evidence more than justifies the jury's assessment of 50 years imprisonment. There is no evidence in the record that the jury disregarded the court's limiting instruction, and quite to the contrary, if the jury had disregarded the instruction, it likely would have assessed appellant's punishment at 60 years or life imprisonment, as requested by the prosecutor. We conclude that evidence in the record does not rebut the presumption that the jury followed the court's cautionary instruction, and we hold beyond a reasonable doubt that the court's general advice about the parole law made no contribution to the punishment assessed. Tex.R.App.P. 81(b)(2).

Appellant's point of error is overruled.

The judgment of the trial court is affirmed.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I respectfully dissent. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App.1987) (op. on reh'g) (*Rose II*), told us to apply the harm analysis of rule 81(b)(2), Tex.R. App.P., to determine if there was error in the cases submitted with the parole instruction. According to rule 81(b)(2), we must reverse the judgment unless we decide, beyond a reasonable doubt, the error in the charge did not contribute to the punishment. It is the State's burden to prove the constitutionally defective parole instruction did not contribute to the punishment.

*Rose II* gave us three factors to consider in making the harm analysis in these cases: (1) whether the trial court gave the curative instruction, (2) the heinous nature of the crime, and (3) the defendant's criminal record. *Rose II,* 752 S.W.2d at 554.

In this case: (1) the trial court did not give the curative instruction, (2) the crime was heinous, and (3) appellant did not have a criminal record. Of the 45 cases this Court has reviewed under the *Rose II* analysis, this is the first case that we have affirmed when only one of the three *Rose II* factors was present.[1]

The majority believes that the statutory charge was as effective in warning the jury not to consider parole as was the curative instruction discussed in *Rose II.* The majority says the instruction was the trial court's "last word" on the subject of parole. I see the logic in their argument: if the *Rose II* opinion stands for the proposition that the trial court's last instruction resolves conflict in the charge, it is just as logical to suppose the jury followed the next to last instruction to disregard.

These parole charge cases will pass. Unfortunately, the new rule promulgated by

1. As of March 21, 1989. With all the problems of *Rose II,* there are some general statements we can make about how this Court decides cases under the *Rose II* review. After analyzing a data base of all our cases, it is clear the one factor this Court respects more than any other is the finding that the crime was heinous. In all 13 cases in which this Court has determined the crime was heinous, we affirmed. Before today's case, each of those 13 cases in which the

defendant committed a heinous crime, at least one of the other two *Rose II* factors was present: either the trial court gave the curative instruction or the defendant had a criminal record. Of these, the only published case, *Gillian v. State,* 766 S.W.2d 867 (Tex.App.—Houston [1st Dist.], n.p.h.) illustrates this point. In *Gillian:* (1) the trial court did not give the curative instruction, (2) the crime was heinous, and (3) defendant had a criminal record. *Id.*

*Rose II* will remain. That new rule is: when the trial court gives conflicting instructions in the charge, we will presume the jury probably followed the trial court's last instruction. In dealing with the conflicting instructions in *Rose II*, the Court of Criminal Appeals found it "particularly significant" that "the judge's last word on the subject," was that "parole was not [the jurors'] concern." 752 S.W.2d at 554.

The *Rose II* court arrived at this resolution of the problem by combining two presumptions to disregard. The first presumption *Rose II* relied on is the presumption that the jury follows the trial court's instructions in the charge, citing *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Crim. App.1983). In *Cobarrubio*, the court assumed the jury followed the trial court's instruction "to the letter," when the charge improperly lessened the State's burden. *Id.* None would argue with that statement or the authority.

The second presumption, merged into this new rule by *Rose II*, is the presumption that a jury will follow the trial court's instruction to disregard after the court sustains an objection to inadmissible evidence or improper argument. *Rose II* cited *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987), for this proposition. In *Gardner*, the defendant argued that the trial court should have granted his motion for mistrial following the instruction to disregard improper evidence and argument. The court held that it presumed the jury followed the instructions to disregard. Again, everyone would agree with this statement of the law.

Both presumptions, independently of one another, are valid. It is a major extension of the two presumptions, however, to merge them into this new rule and hold the "judge's last word on the subject" resolves conflicts in the charge. See *Rose II*, 752 S.W.2d at 554.

The problem is this: when a judge sustains an objection and instructs the jury to disregard what it heard, the jury is a witness to the mistake, the judge's reprimand, and the correction. In most cases, it is reasonable for us to assume the jury disregarded what the judge told it to disregard. When, however, the trial judge tells the jury to disregard *what he just told them*, there is no mistake, no reprimand, no correction. It is not reasonable to assume the jury followed the judge's instruction to disregard part of what he just said.[2]

I recognize that this Court said here and in cases that pre-dated *Rose II*, that the instruction to consider parole "in this case" was not in conflict with the instructions not to consider parole "as to this defendant." *See, e.g., Shaw v. State*, 728 S.W.2d 889, 892 (Tex.App.—Houston [1st Dist.] 1987, no pet.). I disagree for two reasons. First, *Rose II* implied there was a conflict when it created this new presumption that the jury follows the judge's last word. Second, the parole instruction told the jury to both consider parole in *this case* but not as to *this defendant*. The jury was there to make only one decision: what punishment is appropriate for this defendant? The jury was not brought together to ponder the philosophical consequences of the parole laws in *this case*. If the jury was to consider parole at all, it was only in its decision on punishment as to *this defendant* in *this case*.

The instruction to consider parole is, at best, an abstract principle of law not related to the jury's decision about defendant's

---

2. Even the presumption that the jury follows the trial court's instruction to correct the mistake in the charge does not support this new presumption. *See, e.g., Bustillos v. State*, 464 S.W.2d 118, 125–26 (Tex.Crim.App.1971) (the trial court corrected a "clerical error" by striking "with a gun" from two paragraphs after the State's argument). The presumption in *Bustillos*, like the presumption in *Gardner*, contains elements of mistake and correction that are absent in the new presumption created by *Rose II*. For example, in cases like *Bustillos*, we presume the jury followed the instructions correcting a mistake in the charge because the trial court acknowledges the mistake and makes the correction. When the trial court gave the parole instruction in this case, however, it did not acknowledge a mistake or make a correction. Seconds after the trial court told the jury to consider parole, it told them *not* to consider parole as to this defendant. I do not believe we can presume the jury followed this kind of instruction.

punishment. But, even that interpretation of the instruction should cause us to reverse: the Court of Criminal Appeals has repeatedly told us that the charge should not contain abstract propositions of law. *Newton v. State,* 648 S.W.2d 693, 694 (Tex. Crim.App.1983). The charge must clearly apply the law to the facts of the case. *Id.* In *Newton,* the charge included abstract propositions of the law about robbery. Defendant, however, was charged with *aggravated* robbery. The court held the instruction on robbery was an abstract principle of law that was not applied to the case. The court said it was fundamental error and reversed on unassigned error. *See also Williams v. State,* 622 S.W.2d 578, 579 (Tex.Crim.App.1981), where the court reversed because:

> [T]he charge contained certain abstract principles governing the law of aggravated assault, but at no time was there an application of those principles of law to the specific facts of the case.

Because of the emphasis placed on parole during this case, I doubt the jury ignored the parole instruction when it made its decision on punishment. The State told the jury any sentence over 60 years was superfluous and recommended a minimum sentence of 45 years. The jury returned a sentence of 50 years.

*Rose I* said, "The risk that punishment will be based on extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." 752 S.W.2d at 537.

I would reverse and remand this case for a new trial on punishment because I cannot say beyond a reasonable doubt the parole instruction did not contribute to appellant's punishment. Tex.Code Crim.P.Ann. art. 44.29(b) (Vernon Supp.1989).