**Jorge RODRIGUEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–87–00296–CR, 01–87–00297–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 20, 1989.

Janet Seymour Morrow, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

Before EVANS, C.J., and O'CONNOR and DUGGAN, JJ.

## OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS

DUGGAN, Justice.

The Court of Criminal Appeals has remanded these causes for our consideration of the harm, if any, to appellant by the inclusion of the parole charge, given pursuant to Tex.Code Crim.P.Ann. art. 37.07 [1]. We are to analyze the harm under Tex.R. App.P. 81(b)(2). *See Rose v. State,* 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g). These are companion cases to *Villanueva v. State,* 769 S.W.2d 678 (Tex. App.—Houston [1st Dist.], 1989, n.p.h.).

After a joint jury trial with two co-defendants, appellant was found guilty of two separate offenses of aggravated kidnapping. The jury assessed punishment upon each conviction at confinement for 99 years and a $10,000 fine. Appellant requested that the two appeals be consolidated and considered together.

---

**1.** Ch. 576, sec. 1, 1985 Tex.Gen.Laws 2195, *amended by* ch. 66; sec. 1, 1987 Tex.Gen.Laws 170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765.

On June 14, 1986, Mr. & Mrs. David Cummings were at their ranch in Kerrville, Texas. Their teenage son, Jason Flintoft, was at their home in Houston with the housekeeper, Jovita Rangel. At approximately 7:30 a.m., appellant, Jorge Rodriguez, and his two co-defendants, Jose Villanueva and Rene Dorantes, allegedly forced their way into the home and abducted the complainants, Jason and Jovita. The two were bound at their hands and feet, blindfolded, and put into the back of a vehicle. They were moved to different locations and kept blindfolded throughout the entire ordeal.

That evening, following numerous phone calls and negotiations throughout the day, Mr. Cummings delivered a cash ransom of $300,000 to a designated location. Officers saw Dorantes retrieve the money and followed him to a house on Greenville Avenue. Shortly thereafter, officers saw a pickup truck leave the house. After they followed the vehicle outside the city on Highway 59 for approximately 40 miles, they stopped it. They found Dorantes behind the wheel and appellant in the front passenger seat. There were other people in the back of the vehicle. Approximately $190,000 was recovered from the vehicle, the appellant, and another passenger.

Dorantes told the officers that Jason and Jovita were being held at the house on Greenville Avenue. In the early morning hours, a Houston Police Department S.W.A.T. team entered the house and rescued the complainants. Villanueva and another man were arrested. Another $7,600 was found at the house. Over $96,000 was never recovered.

■ The parole charge has been held unconstitutional as a violation of the separation of powers doctrine and due course of law provisions of the Texas Constitution. *Rose*, 752 S.W.2d at 529. When a parole charge has been given, the rule 81(b)(2) test

must be applied to determine whether appellant was harmed. *Id.* at 552–53.

Tex.R.App.P. 81(b)(2) provides:
If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

This standard of review places the burden of proof on the State to demonstrate that appellant suffered no harm because of the parole instruction. *See Taylor v. State*, 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.] 1988, pet. pending). In concluding that the defendant suffered no harm because of the parole instruction, the *Rose* opinion considered: (1) the curative instruction given by the trial court; (2) the heinous nature of the offense in question; and (3) the appellant's prior criminal record. 752 S.W.2d at 554–55.

■ Applying the harm analysis of Tex.R.App.P. 81(b)(2) to the facts of this case, we observe that the jury convicted appellant of two counts of aggravated kidnapping, a heinous crime [2]. The jury heard the trial court's curative instruction in the written charge "not to discuss how long each accused would be required to serve" because "[s]uch matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas." *See* 752 S.W.2d at 554 (the curative instruction was "particularly significant because this was the judge's last word on the subject").

There is a rebuttable presumption that the jury followed this instruction, and the record before us supports this presumption. *See Jones v. State*, 755 S.W.2d 545 (Tex.App.—Houston [1st Dist.] 1988, pet. pending). There was no discussion of the law of parole or good conduct credit during the voir dire. At the punishment stage, the State introduced evidence of appellant's pri-

---

**2.** During voir dire the prosecutor explained that aggravated kidnapping is considered such a serious offense because "someone's physical safety is jeopardized for money" and that it is "one of those rare offenses where the federal authorities have authority to get involved" because there is such a concern not to "have loved ones abducted for money."

or conviction for the unauthorized use of a motor vehicle, and no mention of the law of parole or good conduct credit occurred during jury argument. Additionally, the jury was instructed that the punishment range for aggravated kidnapping was confinement for life or for any term of not more than 99 years or less than 5 years, and a fine not to exceed $10,000.

Although appellant received the maximum sentence in both instances, in light of the gravity of the offense and the severity of the facts, as recounted above, we find beyond a reasonable doubt that the error did not contribute to the punishment assessed. Tex.R.App.P. 81(b)(2).

The judgment of the trial court is affirmed.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I respectfully dissent. *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g) (*Rose II*), told us to apply the harm analysis of Tex.R.App.P. 81(b)(2), to determine if there was error in the cases submitted with the parole charge. According to Rule 81(b)(2), we must reverse the judgment unless we decide, beyond a reasonable doubt, the error in the charge did not contribute to the punishment. It is the State's burden to prove the constitutionally defective parole charge did not contribute to the punishment.

*Rose II* gave us three factors to consider in making the harm analysis in these cases: (1) whether the trial court gave the curative instruction; (2) the heinous nature of the crime; and (3) the defendant's criminal record. *Rose II*, 752 S.W.2d at 554.

In this case: (1) the trial court gave the curative instruction; (2) the crime was heinous; and (3) appellant had a criminal record.

In *Villanueva v. State*, 769 S.W.2d 678 (Tex.App.—Houston [1st Dist.], 1989, n.p. h.), a companion case to this case, another panel of this Court disavowed one of the primary holdings in *Urbano v. State*, 760 S.W.2d 33 (Tex.App.—Houston [1st Dist.] 1988, pet. pending). I do not believe this Court ought to abandon the position we took in *Urbano*.

In *Urbano*, this Court said:

In concluding our analysis, we note that appellant received a sentence of 99 years confinement. The trial court instructed the jury that the maximum punishment possible was 99 years or life. Although appellant did not receive that maximum sentence (life), he did receive the next most severe sentence—99 years. This fact, too, indicates that appellant suffered harm.

In *Villanueva*, this Court said:
The jury's assessment of the maximum punishment indicates their abhorrence for the perpetrators of the crime. The charge instructed the jury that appellant would not "become eligible for parole until the actual time served equals one-third of the sentence imposed or twenty years, *whichever is less*, without any consideration of any good conduct time...."
The jury knew, therefore, that appellant would be eligible for parole in 20 years, whether they assessed a sentence of 60 years (⅓ of 60 = 20) or 99 years. They nevertheless assessed the longer sentence knowing it would not delay appellant's parole eligibility date. Thus, at least the last 39 years of appellant's 99-year sentence cannot be attributed to the parole instruction.

I believe the Court was correct in *Urbano* when it held the assessment of the maximum or near-maximum punishment is some evidence the parole instruction harmed appellant. I believe the Court was wrong in *Villanueva* when it held the assessment of the maximum punishment is evidence the parole instruction did not harm appellant.

*Rose I* said, "The risk that punishment will be based on extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." 752 S.W.2d at 537. For the reasons stated in my dissent in *Brooks v. State*, 768 S.W.2d 481 (Tex.App.—Houston [1st Dist.], n.p.h.), I believe the jury probably considered parole.

I would reverse and remand this case for a new trial on punishment because I cannot say beyond a reasonable doubt the parole charge did not contribute to appellant's punishment.