**Robert BAREHILL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00723–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 20, 1989.

Douglas M. O'Brien, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before EVANS, C.J., and O'CONNOR and DUGGAN, JJ.

OPINION

DUGGAN, Justice.

The Court of Criminal Appeals vacated our judgment and remanded this cause. We must consider whether appellant was harmed by a parole charge that was based on an unconstitutional statute, Tex.Code Crim.P.Ann. art. 37.07, sec. 4(a).[1] *See Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g). We must analyze the harm under the guidelines of Tex.R.App.P. 81(b)(2). *Id.*

Rule 81(b)(2) provides that this Court must reverse a judgment unless we determine, beyond a reasonable doubt, that the error did not contribute to the punishment. The State has the burden to show the absence of harm. *See Taylor v. State*, 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.] 1988, pet. pending).

A jury convicted appellant of aggravated robbery. The punishment range for this offense is five to 99 years or life and up to a $10,000 fine. The jury assessed his punishment at 12 years confinement.

The evidence presented at the guilt-innocence stage of trial showed that appellant entered a fast-food restaurant at 9 p.m. He ordered some chicken. When asked to

---

**1.** Ch. 576, sec. 1, 1985 Tex.Gen.Laws 2195, *amended by* ch. 66, sec. 1, 1987 Tex.Gen.Laws 170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765.

pay, he pulled out a concealed handgun and pointed it at the cashier's face.

Neither the prosecutor nor defense counsel mentioned the parole laws during voir dire. At the punishment stage of trial, appellant admitted he had three prior misdemeanor convictions. He also admitted he had a past drug problem. During closing arguments at the punishment stage, the prosecutor recommended a punishment of 50 years. He did not mention the parole laws or their application. Defense counsel asked the jury to consider probation or the minimum sentence. He explained to the jury that the parole portion of the charge meant "you are not to sit down with a pencil or figure out in your mind how much time someone actually serves. You're just given this information as a guideline."

■ The charge did not inform the jury that parole matters are within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State. *Compare Rose,* 752 S.W.2d at 554. However, the statutory instruction telling the jury not to consider the parole laws creates a rebuttable presumption that the jury followed the instruction. *Fambro v. State,* 751 S.W.2d 956, 959 (Tex.App.—Eastland 1988, pet ref'd). There is no evidence to rebut this presumption.

We therefore conclude, beyond a reasonable doubt, the parole instruction did not contribute to the punishment assessed.

We overrule appellant's fifth point of error challenging the parole instruction and affirm the judgment.

O'CONNOR, J., dissents with opinion.

O'CONNOR, Justice, dissenting.

I respectfully dissent. *Rose v. State* told us to apply the harm analysis of Tex.R. App.P. 81(b)(2), to determine if there was error in the cases submitted with the parole instruction. 752 S.W.2d 529, 552 (Tex. Crim.App.1988) (op. on reh'g) (*Rose II*). I do not believe the State carried its burden to prove the constitutionally defective parole instruction did not contribute to the punishment.

*Rose II* gave us three factors to consider in making the harm analysis in these cases: (1) whether the trial court gave the curative instruction, (2) the heinous nature of the crime, and (3) the defendant's criminal record. *Rose II,* 752 S.W.2d at 554. The *Rose II* court was particularly impressed with the curative instruction because it was "the judge's last word on the subject." 752 S.W.2d at 554.[1]

In this case: (1) the trial court did not give the curative instruction, (2) the crime was not heinous, and (3) appellant's only prior convictions were for misdemeanors.

As of March 3, 1989, this Court had reviewed 45 cases under the *Rose II* analysis. This is the first case that we have affirmed when only one of the three *Rose II* factors was present. This Court has reviewed eight cases in which the crime was not heinous and the defendant did not have a criminal record. In five of those cases, this Court remanded for a new trial on punishment.[2]

In making the harm analysis, the majority opinion considered that the defense counsel discussed parole in his closing argument. This Court has considered defendant's argument of parole in only two published cases from our Court, with inconsistent results. In *Urbano v. State,* 760 S.W.2d 33 (Tex.App.—Houston [1st Dist.] 1988, pet. pending), this Court noted that defendant's attorney argued parole, which this Court said was harmful. *Id.* at 39. In *Gilliam v. State,* 766 S.W.2d 867 (Tex.App. —Houston [1st Dist.] 1989, n.p.h.), this

---

1. This Court is not impressed with the curative instruction. In *Washington v. State,* 768 S.W.2d 497 (Tex.App.—Houston [1st Dist.], n.p.h.) (not yet reported), this Court held "the judge's last word" to disregard in the statutory instruction was just as effective as the instruction to disregard in the curative instruction. I was persuaded by the majority's logic on that issue but dissented for other reasons.

2. Unfortunately, most of the cases were ordered not published. The only case that was published is *Rische v. State,* 757 S.W.2d 518 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). In *Rische,* which we reversed for retrial of punishment: the defendant was convicted of voluntary manslaughter, no curative instruction was given, the crime was not heinous, and defendant did not have a criminal record.

Court interpreted defense counsel's lengthy argument about parole as waiving the error because it was part of his trial strategy.[3]

I do not believe appellant here or defendant in *Gilliam* invited or waived the constitutional error in the charge when defense counsel mentioned parole.[4] I do not believe either of them *could* waive the error. A defendant cannot accidentally waive an unknown right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). We cannot infer or presume a defendant waived constitutional error. *Robles v. State*, 577 S.W.2d 699, 703 (Tex.Crim.App. 1979). We must indulge every reasonable presumption against the waiver of constitutional rights. *Id.*

Appellant could not waive his right to a punishment trial free of a constitutionally defective charge by mentioning parole unless appellant knew the parole instruction was constitutionally defective. At the time this case was tried, this Court believed article 37.07, sec. 4 was constitutional. *See Clark v. State*, 721 S.W.2d 424 (Tex.App.— Houston [1st Dist.]) (where this Court held article 37.07, sec. 4 was constitutional), *vacated*, 760 S.W.2d 657 (Tex.Crim.App.1986). If this Court believed article 37.07, sec. 4 was constitutional at the time this case was tried, we cannot fault appellant for acting as if it were constitutional.

In discussing the parole laws, appellant's defense counsel was acting according to the Legislature's expressed intent. The Legislature expected attorneys for the State and the defense to discuss parole in final arguments. Just before the final vote on article 37.07, sec. 4, the following question was addressed to Senator Buster Brown, the bill's sponsor:

> *Senator:* Does your bill have the latitude for the court to be able to tell the jury also that this person's obvious problem, or this person's alleged problem, at sentencing, which is disclosed at sentencing, can be addressed in that system, in that prison system?
>
> *Senator Buster Brown:* Senator, I think the best way I can answer that is that the *bill allows for both the State and the defense to argue on the subject of parole and good time*, and—[Emphasis added.]
>
> *Senator:* O.K. So you in effect allow both the defense and the prosecution to comment on it?
>
> *Senator Brown:* That's correct.
>
> *Senator:* O.K. Well that's a far better balanced thing than just a jury instruction as such, one-sided and probably not complete.
>
> *Senator Brown:* That was the belief of the committee, Senator, in moving the bill out.

(Tex.Leg. 69th Session, [on tape] April 3, 1985.)

Instead of considering the mention of parole by appellant as a factor justifying

---

3. In *Villanueva v. State*, 769 S.W.2d 678 (Tex. App.—Houston [1st Dist.], 1989, n.p.h.), this Court amended or clarified the *Urbano* opinion by disavowing the *Urbano* holding that a maximum sentence is some indication the parole instruction caused harm. In *Villanueva*, this Court explained that we reversed *Urbano* for retrial on punishment because the prosecutor and the defense attorney mentioned parole in their final arguments. In *Villanueva*, the Court specifically said *Urbano* stands for the proposition that when the prosecutor and defense attorney discuss parole, it harms defendant. If *Urbano* stands for the proposition that when the defense counsel talks about parole it is some evidence that the parole instruction harmed defendant, I agree. That means, however, this Court has disaffirmed *Gilliam v. State*, 766 S.W.2d 867 (Tex.App.—Houston [1st Dist.] 1989, n.h.p.).

4. *Rose II* said evidence about parole laws was not admissible and counsel were prohibited from arguing parole to the jury. 752 S.W.2d at 537; Tex.Code Crim.P.Ann. art. 37.07, sec. 4(d), ch. 576, sec. 1, 1985 Tex.Gen.Laws 2195, *amended by* ch. 66, sec. 1, 1987 Tex.Gen.Laws 170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765 (which prohibited the introduction of evidence about the *operation* of parole and good conduct time laws). All references in this dissent are to the 1985 version of article 37.07, sec. 4. The Legislature was concerned that the executive in charge of the Board of Pardons and Paroles would spend all his time testifying about the application of the parole laws. (Tex. Senate Criminal Justice Comm. Hearing [on tape], 69th Leg. February 26, 1985.)

affirming, I would hold any mention of parole by either the State or the defense was grounds to reverse. If either side discussed parole in argument, I would assume the jury considered the parole laws in their sentence.

*Rose II* requires a harm analysis, not a fault analysis. 752 S.W.2d at 554. *Rose II* requires us to decide if the jurors *considered* parole in assessing punishment. *Id.* The issue before us is not waiver. That issue was already decided in favor of appellant when *Rose II* held it was not necessary to object to the charge. 752 S.W.2d at 552–53.

Because of the emphasis placed on parole during this case, I doubt the jury ignored the parole instruction when it made its decision on punishment. The State recommended a sentence of 50 years, and appellant's counsel argued for probation but in no event more than a 10–year sentence. Defense counsel explained that any sentence over 10 years precluded appellant from probation. The jury returned a sentence of 12 years.

I seriously doubt the jury ignored the parole instruction when it made its decision on punishment. The jury returned a sentence of 12 years, a number divisible by three. The jury knew that any sentence over 10 years meant appellant would serve time in the penitentiary.

*Rose I* said, "The risk that punishment will be based on extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." 752 S.W.2d at 537.

I would reverse and remand this case for a new trial on punishment because I cannot say beyond a reasonable doubt the parole instruction did not contribute to appellant's punishment.