Glen Arnold GRIFFIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 746–87.

Court of Criminal Appeals of Texas,
En Banc.

March 21, 1990.

Henry L. Burkholder, III, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., William J. Delmore, III and Lee Coffee, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of aggravated sexual assault and his punishment assessed by the jury at 55 years in the Texas Department of Corrections.

We granted appellant's petition for discretionary review to examine four grounds for review, including three grounds implicating alleged error in the trial court's charge to the jury under this Court's opinion on rehearing in *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1988). We now address only the first of appellant's grounds, and will remand the cause to the court of appeals for reconsideration of appellant's other grounds in light of our disposition in *Rose.*

In his first ground for review appellant contends the State committed reversible error in arguing during its summation at the punishment phase of trial that an extraneous aggravated sexual assault, admitted at the guilt phase as probative on the issue of identity, was justification, along with the instant offense, for the jury to deny his application for probation. In an unpublished opinion the First Court of Appeals characterized the State's argument rather as a "proper plea for law enforcement," and affirmed the conviction. *Griffin v. State*, 1987 WL 10545 (Tex.App.—Houston [1st], No. 01–86–00338–CR, delivered May 7, 1987). We granted appellant's petition to determine whether the opinion of the court of appeals can be squared with prior opinions of this Court. Tex.R.App.Pro., Rule 200(c)(3).

### I.

In the early morning hours of August 20, 1985, a white male broke into the apartment of Teresa Eddings and Chuck Cretien. At gunpoint, and later at knifepoint, the assailant forced Eddings to bind Cretien and place a pillowcase over his head. He then proceeded to bind Eddings and rape her orally, vaginally and anally, and to rape Cretien orally. Eddings subsequently identified appellant tentatively from a photographic array, and later, positively identified him in a lineup. Cretien was able to make a voice identification of appellant at the lineup as well. Each testified at trial that appellant was their assailant. Appellant presented evidence, including his own testimony and that of his wife, that he had been home abed on the night of the alleged assault.

As part of its case in chief the State was allowed to prove appellant committed a notably similar sexual assault upon Arlyn and Dean Turner on September 12, 1985. At the conclusion of the guilt phase the trial court gave an instruction to the jury that it could consider the extraneous offense only insofar as it might find this evidence probative of "identity of the defendant, or the issues of intent, motive, system, scheme, or design, in connection with this offense, and [for] no other purpose." Appellant does not now challenge admissibility of this offense at the guilt phase of trial.

At the punishment phase the State produced several witnesses to testify appellant's reputation for peaceableness was bad. After resubmitting all evidence from the guilt phase for purposes of the jury's punishment deliberation, the State rested. Appellant then presented a dozen witnesses from his family and community. None testified as to appellant's reputation for peaceableness, but each "pledged" to support appellant and, e.g., "do everything in [his or her] power to see to it he lived up to the terms and conditions of ... probation[.]" Appellant testified he had never previously been convicted of a felony offense. Without delving into specifics, other than that he would support his dependents, he asserted he would abide by the terms and conditions of probation. Queried on crossexamination about individual terms of probation, see Article 42.12, § 6(a), V.A.C.C.P., appellant summarized that "[n]one of them would be that hard for me."

Also on crossexamination, the State asked appellant whether, had he been the victim of an offense similar to the one he committed, he would want the perpetrator to receive a probated sentence. In this context, the following exchange occurred:

"Q. Look at the jury and tell the jury that you honestly believe if somebody raped your wife and raped any of your three daughters, tell the jury you honestly believe that person should be given probation.

A. I believe they should.

\*   \*   \*   \*   \*   \*

Q. You don't believe a person like that should go to prison?

A. Not on their first offense.

Q. So, no matter [sic?], that person should not go to prison because it's his first offense; is that correct?

A. No, he shouldn't.

Q. Let's take a situation where that person is—it's his first offense. Not only did he break into your house and rape your wife and three daughters, but he broke into somebody else's house a week later and raped somebody else.

[DEFENSE COUNSEL]: That's not relevant, Your Honor; and we object to it. He's obviously trying to—

THE COURT: Sustain the objection.

[PROSECUTOR]: Judge, I believe the jury has already heard testimony about another offense.

[DEFENSE COUNSEL]: Object to his comment on that statement just after the Court has sustained my objection, Your Honor.

THE COURT: All right. That's denied.

[DEFENSE COUNSEL]: I'd ask the jury be asked to disregard [the prosecutor's] comments for all purposes whatsoever.

THE COURT: You are so instructed.

[DEFENSE COUNSEL]: We would move for a mistrial.

THE COURT: Mistrial denied.

[PROSECUTOR]:

Q. So, if it's the first time he's convicted, he should not be sent to prison; is that correct?

A. Not on their first offense."

An instruction on permissible uses of extraneous offenses was neither requested nor given in the punishment charge to the jury. The charge did enumerate conditions of probation that could be imposed, listing those found in Article 42.12, § 6(a), (1) through (9), supra.

The State waived opening argument at the conclusion of the punishment evidence. Counsel for appellant argued lack of any evidence of wrongdoing by appellant up until August of 1985, and that "[t]he fact there are decent people in the community that are willing to do everything in their power to aid has got to mean something." He expressly asked the jury to recommend probation for appellant. In closing, the State urged the jury to impose a life sentence, ridiculing appellant's request for probation. In that part of its argument of which appellant now complains, the State opined:

"[Prison time is] what this defendant has earned. Probation is one big, big, fat joke. I don't know how to put it any clearer. It's one big, fat joke. You say, 'Come here, Glen Griffin. (indicating) Come in here,' and slap him on his wrist. It's okay to rape Teresa. *It's okay to rape Arlyn Turner.* It's okay.

[DEFENSE COUNSEL]: Object to that, Your Honor. He's asking this jury now to punish him for crimes he's not charged with in this particular case.

[PROSECUTOR]: It's all proper evidence that was heard, all proper for this jury to hear.

[DEFENSE COUNSEL]: That's not true, Your Honor. I object to that.

THE COURT: Just stay within the record. Your objection is overruled.

[PROSECUTOR]:

It's okay to rape Teresa Eddings. It's okay to assault Chuck Critien. *How about Arlyn Turner? Not only do we give the first rape. The second rape is free.*

[DEFENSE COUNSEL]: Object to that. You instructed this jury what this was, and it's totally different than that.

THE COURT: Yes. Approach the bench. (Off–the–record discussion at the bench.)

[PROSECUTOR]:

So, how many rapes are we going to give him?

[DEFENSE COUNSEL]: May I have a ruling on that?

THE COURT: Objection sustained.

[DEFENSE COUNSEL]: Ask the jury to disregard that statement.

THE COURT: The jury will disregard that statement pertaining to the extraneous offense.

[DEFENSE COUNSEL]: Defense would ask for a mistrial, Your Honor.

THE COURT: Denied.

[PROSECUTOR]: You heard the evidence. If I am making this up—you heard the evidence. *How many rapes could we give this defendant? How many?*

[DEFENSE COUNSEL]: Again, Your Honor, he's indirectly doing what the Court told him specifically not to do.

[PROSECUTOR]: Judge, if [defense counsel] is going to jump up every time I try to argue this case, I'm going to object to him doing that. He had his opportunity to argue.

THE COURT: I'm going to sustain that objection.... Let's move on.

[PROSECUTOR]: How many times? Where do we draw the line?"[1]

On appeal appellant complained of the three prosecutorial remarks emphasized above. He contended, and reiterates now, that the State thus invited the jury to punish him for the extraneous offense, in violation of, *inter alia, Klueppel v. State*, 505 S.W.2d 572 (Tex.Cr.App.1974), *Brown v. State*, 530 S.W.2d 118 (Tex.Cr.App.1975), and *Lomas v. State*, 707 S.W.2d 566 (Tex. Cr.App.1986). The court of appeals disposed of appellant's complaints as to the latter two remarks by pointing out, respectively, that the trial court's instruction was sufficient to cure any error attending the second remark, and that, because appellant's objection to the third was sustained, and he failed to request further relief by way of an instruction to disregard, any error was waived. We have no cause to question this disposition. As for the State's first remark, however, objection to

which was overruled, the court of appeals found it to constitute "a proper plea for law enforcement[,]" on authority of this Court's opinion in *Williams v. State*, 607 S.W.2d 577, 581 (Tex.Cr.App.1980). We disagree with this particular assessment.

## II.

In *Williams v. State*, supra, and the cases it cites, e.g., *Bacon v. State*, 500 S.W.2d 512 (Tex.Cr.App.1973), this Court deemed it a proper plea for law enforcement for the State to argue that for the jury to recommend probation would be tantamount to allowing the accused one "free" offense, *viz:* the offense on trial. In the instant cause the prosecutor was essentially allowed to argue to the jury that to recommend probation for appellant would communicate that it was "okay" to commit two crimes, both the offense on trial and the extraneous offense. As appellant contends, this is very like asking the jury to assess punishment for more than one offense.

In *Lomas v. State*, supra, the Court reviewed the holdings of *Klueppel v. State* and *Brown v. State*, both supra, and gleaned the following rule:

"[I]f the surrounding facts and circumstances of a charged offense include a collateral offense, the State may not simply point out the existence of a collateral offense and thereby request *additional* punishment for that *collateral* offense. Such an argument seeks to punish a defendant for an act for which he is not on trial. The State must more narrowly show that the collateral offense in some way further enhances the gravity of the charged offense and, in fact, is inexorably connected with the charged offense."[2]

707 S.W.2d at 569. Clearly the collateral sexual assault on the Turners, occurring more than three weeks after the assault on trial, was not "inexorably connected with the charged offense" in contemplation of *Lomas*. It would have been error, there-

---

1. All emphasis supplied unless otherwise indicated.

2. Emphasis in the original.

fore, to allow the prosecutor specifically to argue that the jury should punish appellant for both offenses. Was it error, analogously, to allow the State to argue appellant should be denied probation in part because of his commission of the extraneous offense? For reasons very different than those given by the court of appeals, we conclude that it was not.

### III.

In *Murphy v. State,* 777 S.W.2d 44 (Tex. Cr.App.1989) (Opinion on State's motion for rehearing), a plurality of this Court held that Article 37.07, § 3(a), V.A.C.C.P., prohibits admission of specific conduct evidence, over objection, at the punishment phase of trial. Accordingly, extraneous offense evidence admitted at the guilt phase of trial, and expressly limited to use to establish some fact of consequence at that phase, such as identity, motive or intent, will not be accorded some other significance at the punishment phase of trial. Here, appellant's extraneous assault upon the Turners was admitted at the guilt phase as part of the State's proof of identity. Ordinarily, however, the State would be prohibited by Article 37.07, § 3(a), supra, from making further use of that extraneous offense for any purpose at the punishment phase, either evidentiary or rhetorical.

■ The plurality in *Murphy v. State,* supra, also held that "suitability" for probation, or the ability of a defendant to abide by the terms and conditions that might be imposed upon him as a probationer, is not at issue in the punishment phase of trial. The mere filing of an application for probation will not authorize the State to present evidence of specific acts of misconduct on the part of the accused. Nor is it permissible for the accused, over the State's objection, to present evidence he can conform to conditions of probation. Nevertheless, the parties may open the door, in effect agreeing to make "suitability" for probation a consideration for the jury, thereby consenting "to admission of specific acts of conduct to inform the jury's discretion in deciding ... whether to recommend probation." *Id.,* at 67. Compare

*Drew v. State,* 777 S.W.2d 74 (Tex.Cr.App. 1989), and *King v. State,* 773 S.W.2d 302 (Tex.Cr.App.1989). In our view that is what happened in the instant case.

■ By tendering witnesses to "pledge" their support to appellant in his attempt to follow terms and conditions of probation, and by taking the stand himself to assert he could in fact abide by those terms and conditions, appellant placed his "suitability" for probation in issue. Far from objecting, the State broached the same subject matter in greater detail on crossexamination. Neither party objected to inclusion of terms and conditions of probation in the punishment charge. Therefore, insofar as evidence of specific misconduct might bear on this issue, the parties opened the door to its admissibility, Article 37.07, § 3(a), supra, notwithstanding. In this case the prior sexual assault upon the Turners was logically relevant to rebut appellant's specific assertion as to why he was "suitable" for probation. Appellant volunteered that a first offender for a crime such as his should be given a probated sentence. Under these circumstances the State should be allowed evidentiary and rhetorical use of an extraneous offense to rebut any notion the accused is in fact a first offender.

It is true the trial court prevented the State from posing its hypothetical question to appellant whether he believed one who assaulted his family, and shortly thereafter committed a second, similar offense against another family, was a worthy candidate for probation. Nevertheless, the fact of appellant's assault upon the Turners was in evidence by virtue of the State having resubmitted all evidence from the guilt phase of trial for whatever legitimate purpose it might serve at punishment. One such purpose was to rebut appellant's position that as a first time offender with no prior criminal history, he was "suitable" for a probated sentence. This was the use to which the State put the evidence of extraneous misconduct in its final argument. "Suitability" for probation having been put in issue by the parties, we perceive no error.

## IV.

In two grounds for review appellant contends the court of appeals erred in its treatment of his point of error complaining of the instruction that was given to the jury at the punishment phase pursuant to Article 37.07, § 4, V.A.C.C.P. The court of appeals held that appellant waived appellate review by failing to object to the charge, and that at any rate the statutory provision did not violate separation of powers under Article II, § 1 of the Texas Constitution. Both holdings have since been rejected by this Court in its opinion on rehearing in *Rose v. State*, supra. Accordingly, we will remand this cause to the court of appeals to conduct a harm analysis under Tex.R.App.Pro., Rule 81(b)(2), pursuant to *Arnold v. State*, 784 S.W.2d 372 (Tex.Cr.App.1990).

In a related ground for review appellant asserts the trial court erred in overruling his objection to the State's argument that appellant could be eligible for parole in less than twenty years "by the award of good time." The court of appeals resolved this point of error by noting the trial court, while overruling the objection, at the same time "instructed the jury ... to refer to and follow the charge." We observe, however, that the trial court charged the jury that "the defendant ... *may earn time off the sentence imposed* through the award of good conduct time." To the extent it might be understood by the jury to mean that by earning good conduct time appellant may actually reduce his sentence, this instruction is inaccurate. See *Ex parte Patterson*, 740 S.W.2d 766, at 768, n. 3 (Tex.Cr.App.1987). The jury may also have interpreted this instruction to mean award of good conduct time would accelerate appellant's parole eligibility date. But because the jury had already found appellant guilty of aggravated sexual assault, good conduct time would have no such effect. Article 42.18, § 8(b)(1), V.A.C.C.P. That the jury charge later asserts that parole eligibility is to be determined "without consideration of any good time he may earn" only serves to complicate rather than clarify matters. Under these circumstances we cannot agree the court's charge was efficacious in overriding the prosecutor's affirmative misstatement of the law.

With this observation, because this ground is related to appellant's *Rose* grounds, rather than treat it fully here, we remand this point also to the court of appeals for further consideration, if necessary, in light of *Arnold v. State*, supra.

Accordingly, the judgment of the court of appeals is vacated, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

McCORMICK, P.J., and WHITE, J., concur in the result.

TEAGUE, J., dissents.