Glenn Arnold GRIFFIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00338–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 6, 1991.

---

Henry Burkholder, III, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Mary Lou Keel, William Delmore, III, Asst. Harris Co. Dist. Attys., for appellee.

Before SAM BASS, PRICE[1] and DUNN, JJ.

## OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS

DUNN, Justice.

A jury found appellant, Glenn Arnold Griffin, guilty of aggravated sexual assault and assessed punishment at 55 years confinement.

In an unpublished opinion, this Court affirmed appellant's conviction. This Court determined that appellant waived his right to challenge the constitutionality of the jury charge during the punishment phase of the trial; the charge included an instruction on parole and good conduct time ("a *Rose* charge"). *Griffin v. State*, No. 01–86–00338–CR, 1987 WL 10545 (Tex.App.—Houston [1st Dist.], May 7, 1987, pet. granted) (unpublished). In addition, this Court determined that the trial court's instruction to the jury to follow the charge cured any error caused by the prosecutor's argument that the minimum time appellant served on his sentence could be reduced by the award of good conduct time. *Id.*

The Court of Criminal Appeals held that the jury charge, which included a *Rose* charge, was unconstitutional and remanded the cause to this Court to determine if the *Rose* charge was harmful. *Griffin v. State*, 787 S.W.2d 63, 68 (Tex.Crim.App. 1990). The Court of Criminal Appeals also concluded that the prosecutor's jury argument referring to the award of good conduct time was a misstatement of the law, and that the trial court's instruction to follow the charge did not cure any error because the charge was inaccurate. *Id.*

---

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Consequently, the court remanded the cause to this Court to fully consider the issue. *Id.*

In his first point of error on remand, appellant contends that the trial court unconstitutionally charged the jury on the law of parole and good conduct time and the record fails to show that appellant was not harmed by the charge. In his second point of error on remand, appellant contends that the trial court erred in allowing the prosecutor to argue that the minimum time appellant served on his sentence could be reduced by the award of good conduct time; appellant contends that his minimum time served could not be reduced by good conduct time. We consider both points of error together because they are related.

During the punishment stage of the trial, the court charged the jury:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or twenty years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibili-

ty for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of the laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The charge was mandatory under the provisions of former TEX.CODE CRIM.P.ANN. art. 37.07, § 4(a).[2]

■ The Court of Criminal Appeals found a charge given pursuant to article 37.07, section four violated the state constitution. *Rose v. State*, 752 S.W.2d 529, 535, 537 (Tex.Crim.App.1987). If a *Rose* charge was given, an appellate court must conduct harm analysis under TEX.R.APP.P. 81(b)(2). 752 S.W.2d at 554 (op. on reh'g). When the record of a case shows error, an appellate court should reverse a judgment unless "the appellate court determines beyond a reasonable doubt that the error made no contribution ... to the punishment." TEX.R.APP.P. 81(b)(2). The burden is on the State to show absence of harm. *Arnold v. State*, 786 S.W.2d 295, 298 (Tex.Crim.App. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990); *Rodriguez v. State*, 782 S.W.2d 503, 504 (Tex.App.— Houston [1st Dist.] 1989, no pet.).

■ In *Arnold*, the court listed several factors an appellate court should consider when determining whether a *Rose* charge was harmful. The factors included:

(1) whether parole was mentioned during voir dire, 786 S.W.2d at 301;

(2) whether the instruction was submitted over the objection of appellant's trial counsel, *Id.* at 301–302;

---

2. Act of June 13, 1985, 69th Leg., R.S., ch. 576, § 1, 1985 Tex.Gen.Laws 2195, 2195, *amended by* Act of May 6, 1987, 70th Leg., R.S., ch. 66, § 1, 1987 Tex.Gen.Laws 170, 170–71, *amended by* Act of June 19, 1987, 70th Leg., R.S., ch. 1101, § 15, 1987 Tex.Gen.Laws 3765, 3765.

(3) whether the prosecutor, during argument, urged the jury to consider the law of parole and good conduct time, *Id.* at 302–304;

(4) whether the jury, during deliberation, sent any notes to the trial court inquiring about parole or good conduct time, *Id.* at 304–305;

(5) the punishment assessed, *Id.* at 305;

(6) whether the jury rejected an application for probation, *Id.;*

(7) whether a "curative" instruction was given, *Id.* at 310–11; and

(8) the facts of the particular case, *Id.* at 311–12.

In the present case, neither parole nor good conduct time were mentioned during voir dire. Appellant's trial counsel made no objection to the *Rose* charge. Additionally, the jury directed no notes to the trial court inquiring about parole or good conduct time.

■ Appellant was convicted of aggravated sexual assault. He broke into the apartment complainant shared with her boyfriend and threatened them with a gun. He tied the boyfriend up and covered his head with a pillowcase. By threatening complainant with a gun, appellant forced her to perform oral sex on her boyfriend, and then appellant performed oral sex on the boyfriend. Appellant then orally, vaginally, and anally raped complainant. During the assault, appellant terrorized complainant by cutting off her shoulder-length hair and cutting off her pubic hair. In addition, appellant robbed the couple. Appellant was convicted of a "heinous" crime. However, the "heinousness" of the crime is "a slippery indicator for gauging how a jury evaluated conduct of appellant in assessing punishment" and can only be used as one factor in determining whether a *Rose* charge contributed to the punishment assessed. *Id.* at 312.

The potential range of punishment was five years to 99 years or life confinement and a fine up to $10,000. Tex.Penal Code Ann. § 12.32 (Vernon Supp.1991). Appellant urged the jury to grant probation. The State urged the jury to refuse to grant probation and to sentence appellant to confinement for life. The jury rejected appellant's application for probation and sentenced him to 55 years confinement. Although the punishment assessed was less than the potential maximum, the *Rose* charge may have been a contributing factor. *See Harding v. State,* 790 S.W.2d 638, 640–41 (Tex.Crim.App.1990) ("midrange" punishment does not suggest harmless error).

■ The trial court did give a "curative" instruction. Immediately following the *Rose* charge, the charge continued:

You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

The "curative" instruction creates no presumption that the jury did not consider the law of parole and good time conduct. *Arnold,* 786 S.W.2d at 311. However, the "curative" instruction is one factor to be considered in a harm analysis. *Id.*

During closing argument at the punishment phase of the trial, the prosecutor directed the jury's attention to the *Rose* charge:

Based on what this man [appellant] did, the only just punishment, the only proper verdict is to put this man is (sic) prison for life. And don't think that 'life' means 'life.' *Look at page three of your charge.* And the Judge will tell you that he [appellant] is the defendant who was found guilty of aggravated sexual assault and *is eligible for parole in one-third of the time that he is sentenced to prison or 20 years, whichever is less.*

If you give a defendant life in prison[,] for a horrible crime like this one[,] for 20 years (sic), if he goes to TDC, sits there, 'I'm not going to do anything. I'm going to be a jerk just like I was when I raped [complainant],' if a person goes to prison and does slightly nothing, in 20 years he is eligible for parole.

(Emphasis added.) Appellant's trial counsel objected to the prosecutor's argument because it told the jury how long appellant would serve on a sentence. The court sustained the objection and "instructed [the jury] to refer to the charge and follow the charge in reaching a verdict."

The prosecutor then continued to refer to parole during his argument:

> You can't consider what the parole law have (sic) on this defendant. But you can consider what the—you cannot speculate when this man would get out of prison. You can go back and consider, *if the person is found guilty of aggravated sexual assault, in 20 years, if that person did nothing in prison, he's eligible for parole.*

(Emphasis added.) Appellant's trial counsel again objected to the argument, but failed to obtain a ruling from the trial court.

The prosecutor continued his argument by referring to good conduct time:

> The Judge has also told you in the Charge that *one-third, 20 years minimum or maximum, could be reduced even further by the award of good time; that if a person goes to prison and he's convicted of aggravated sexual assault and you assess life in prison in 20 years, that person could be eligible for parole in that 20–year period which would be even less by the award of good time.*

(Emphasis added.) Appellant's trial counsel objected to the argument as a misstatement of the law. The trial court overruled the objection and instructed the jury to follow the charge.

The prosecutor resumed his argument by referring to both parole and good conduct time:

> Read the charge. Good conduct time he may earn. And *the Judge will tell you that good conduct time could decrease the sentence a person got in prison.*
> . . . .
> Regardless of what [appellant's trial counsel] thinks the law is, if a person is found guilty and if that person is given life in prison, *he could be eligible for parole in 20 years. That time could be cut to less than 20 by the award of good conduct time.*

(Emphasis added.)

The prosecutor repeatedly urged the jury to consider parole and good conduct time when assessing punishment. The prosecutor explained to the jury how parole and good conduct time could affect the time appellant served on a sentence. Moreover, on two occasions, he specifically referred the jury to the *Rose* charge. *See Harding*, 790 S.W.2d at 640 (prosecutor twice directing jury to *Rose* charge created implication of harm).

■ Furthermore, the prosecutor's references to the award of good conduct time were misstatements of the law because appellant's minimum sentence could not be reduced by the award of good conduct time. *See* Tex.Code Crim.P.Ann. art. 42.18, § 8(b) (Vernon Supp.1991) (prisoner serving sentence for aggravated sexual assault is only eligible for parole when he has served one-fourth of the maximum sentence or 15 years, whichever is less, without consideration of good conduct time). When appellant objected to the prosecutor's argument because he was misstating the law, the trial court overruled the objection. The charge "only serve[d] to complicate rather than clarify matters." *Griffin*, 787 S.W.2d at 68. Initially, the charge instructed the jury that "[u]nder the law applicable in this case ... [appellant] may earn time off the sentence imposed through the award of good conduct time." The charge then instructed the jury that "[u]nder the law applicable in this case ... [appellant's eligibility for parole will be determined] without consideration of any good conduct time he may earn." The charge together with the prosecutor's misstatement of the law were misleading concerning whether the minimum time appellant served on his sentence could be affected by the award of good conduct time.

The prosecutor made several references to the *Rose* charge and parole and good conduct time in his closing argument. Additionally, the charge coupled with the

prosecutor's misstatement of the law, over objection, were, at the least, confusing regarding whether the minimum time appellant served on his sentence could be reduced by good conduct time. Therefore, we find the State did not prove beyond a reasonable doubt that the *Rose* charge did not contribute to the assessment of punishment. We sustain appellant's first and second points of error on remand.

We reverse the judgment and remand the cause for reassessment of punishment.