Ricky Lynn Smith v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-257-CR

     RICKY LYNN SMITH,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 97-062-CR
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Ricky Lynn Smith was charged with and pled guilty to sexual assault of a child. Tex. Pen.
Code Ann. § 22.011(a)(2)(A) (Vernon Supp. 2001). Smith elected to have a jury assess
punishment. He received fifteen years’ imprisonment. In six issues, Smith alleges that his counsel
was ineffective. Because we find Smith’s counsel’s deficient performance did not prejudice him,
we conclude he was not denied effective assistance of counsel. As a result, we affirm his
conviction.
BACKGROUND
      On August 11, 1999, we issued an unpublished opinion affirming Smith’s conviction. Smith
filed a petition for discretionary review with the Court of Criminal Appeals contending that we
erred in holding that he waived his claim of ineffective assistance of counsel. The Court of
Criminal Appeals addressed this issue in Robinson v. State, holding that compliance with Rule
33.1 is not necessary to bring a claim of ineffective assistance of counsel on appeal. Robinson v.
State, 16 S.W.3d 808, 813 (Tex. Crim. App. 2000). Thus, the Court of Criminal Appeals granted
Smith’s petition for discretionary review with regard to his ineffective assistance of counsel claim,
vacated our judgment, and remanded the case to this court so that we could address the merits of
his complaint.
RELEVANT FACTS
      E.T., the victim, testified that around July 1, 1994, Smith, her step-father, forced her to have
sex with him. E.T. became pregnant as a result. Approximately one year after giving birth, E.T.
told her mother about the assault. Smith was arrested, but denied the charges. After DNA test
results showed Smith to be the father of E.T.’s baby, Smith admitted his guilt.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Smith alleges that numerous errors by trial counsel at the punishment phase of his trial
amounted to a denial of his right to effective assistance of counsel. Specifically, Smith contends
trial counsel:
(1) Elicited damaging extraneous offense testimony of other alleged sexual assaults of
the victim, and of alleged beatings of the victim’s mother;
 
(2) Failed to object to improper questioning of reputation witnesses concerning the
proper level of punishment;
 
(3) Failed to object to improper jury arguments which: (a) asked the jury to consider
how parole would affect his sentence, (b) made an improper plea for law
enforcement, (c) made a direct reference to his post-Miranda silence, and (d) asked
the jurors to place themselves in the shoes of the victim.
A.  Standard of Review 
      The Court of Criminal Appeals has extended the Strickland standard of review in Sixth
Amendment ineffective assistance of counsel claims to the punishment phase of a trial. Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). Strickland requires the appellant to show
(1) counsel's performance was deficient and (2) the deficient performance prejudiced or harmed
the appellant. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d
674 (1984); see also Glover v. United States, ___ U.S. ___, 121 S.Ct. 696, 697, 148 L.Ed.2d 604
(2001).
      To show that his trial counsel’s performance was deficient, an appellant must demonstrate that
his defense attorney’s representation fell below an objective standard of reasonableness under
prevailing professional norms. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
Assuming appellant has demonstrated deficient performance, it is then necessary to affirmatively
prove prejudice, which requires appellant to show a reasonable probability that, but for counsel's
errors, the result of the proceeding would have been different. Id. When considering only the
punishment phase of a trial, appellant must demonstrate that the jury's assessment of his
punishment would have been less severe in the absence of counsel's deficient performance. See
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Millburn v. State, 15 S.W.3d 267, 270 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d).
      We indulge a strong presumption that defense counsel's conduct falls within the wide range
of reasonable, professional assistance, i.e., that the challenged action might be considered sound
trial strategy. Stone v. State, 17 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2000, pet. ref’d). 
When there is no motion for new trial and the record is silent as to counsel's reasons for his
actions, we will not speculate about his strategy. Id. The appellant has the burden of proving by
a preponderance of the evidence that he was denied effective assistance of counsel. Thompson,
9 S.W.3d at 813. An allegation of ineffective assistance of counsel will be sustained only if it is
firmly founded in the record and if the record affirmatively demonstrates counsel's alleged
ineffectiveness. Id.
B.  Deficient Performance
      We will first analyze each alleged error to determine whether Smith’s counsel’s performance
was deficient, i.e., whether his attorney's representation fell below an objective standard of
reasonableness under prevailing professional norms. If his counsel’s performance was deficient,
we will then determine whether Smith was prejudiced thereby, i.e., whether there is a reasonable
probability that the jury’s assessment of his punishment would have been less severe in the absence
of such deficient performance.
      1.   Elicited extraneous offense evidence.
      Smith contends his trial counsel elicited damaging extraneous-offense testimony of other
alleged sexual assaults of the victim by Smith, and of alleged beatings of the victim’s mother by
Smith. The State’s evidence consisted of one witness, the victim, E.T. Her testimony on direct
examination related only to the charged incident. On cross-examination, Smith’s counsel asked
E.T. the following:
Q.Okay. Now, you say you don’t remember how long this encounter occurred. Is this
the only time this happened?
 
A.No, sir, it’s not.
 
Q. Was it an on-going situation during the whole year of ‘94, and ‘95, or what, ma’am?
 
A.No, sir, back in ‘92 I had a yeast infection because he had touched me.
 
Q.Now, [E.T.], all of this, you say, happened, and you didn’t say anything to your
mother about it.
 
A. No, I didn’t.
 
Q. Well, you seem to be close to your mother. Why would you not say something
about it?
 
A. Because I’ve seen him beat my mom. And I was not going to say nothing because
I’m scared of him.

      Smith does not dispute that extraneous-offense evidence is admissible at the punishment phase. 
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2001) (article 37.07, section 3(a)
permits the court to admit evidence at punishment of extraneous offenses or bad acts). His
complaint is that the evidence was elicited by his own attorney. 
      The State argues that because it did not respond to Smith’s counsel’s notice of intent to
introduce extraneous offenses pursuant to article 37.07(g), unless his counsel was clairvoyant,
there was no way for him to have anticipated the victim’s answers. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(g).
      An unwritten rule on cross-examination is for counsel not to ask an adverse witness a question
for which counsel cannot reasonably anticipate the answer. Here, Smith’s counsel’s cross-examination solicited not only that had Smith committed a similar offense against E.T. in the past,
but also that he committed a violent act against her mother. This cross-examination actually
assisted the State in its case against Smith. Montez v. State, 824 S.W.2d 308, 310 (Tex.
App.—San Antonio 1992, no pet.) (finding ineffective assistance of counsel, in part, where the
State did not try to inject extraneous offenses, but defense counsel actually and affirmatively
elicited, on cross-examination of the State’s witnesses, numerous highly prejudicial extraneous acts
that otherwise would not have been admissible). As a result, Smith’s counsel’s representation fell
below an objective standard of reasonableness under prevailing professional norms. Strickland,
466 U.S. at 689, 104 S.Ct. at 2065. 
      2.   Failed to object to improper questioning of witnesses on whether Smith should receive
probation for the offense in question.

      At punishment, Smith testified he was suitable for probation because he could abide by its
terms and conditions. Smith then called Jimmy Miller as a character witness. On direct
examination, Smith’s counsel asked Miller the following:
Q. This jury’s got to make a determination about probation. He’s charged with sexual
assault.

      A. I understand that.
 
Q.And you live in the community. Would you be one who would be for Ricky Lynn
Smith getting probation?
 
A.I probably would.
 
Q. And do you feel like he could live up to the terms and conditions of probation?
 
A.I believe so. 
 


On cross-examination, the State asked Miller the following:
Q. And you want people to come up and say you think they would be a good candidate
for probation? Would you think they ought to have probation if they break your
daughter’s - - 
 
A. No, not if he’s been convicted. 
 
Q. Okay. He’s been convicted - -
 
A. Oh, he has?
 
Q. - - of raping his 14-year-old step-daughter.
 
A. Uh-huh.
 
Q.Okay. Do you think somebody who did that ought to have probation?
 
A.No, not if he’s, you know, already been convicted.
 
      Smith claims his counsel was ineffective in not objecting to the above cross-examination,
because it inquired into whether Smith should receive probation for the offense in question.       Smith then called another character witness, Roger Sesters. On direct examination, Smith’s
counsel asked Sesters the following:
Q.Do you feel like he would be a person that would be subject or should be considered
for probation on this charge?
 
A. I don’t know. I’m really against this kind of thing. I mean, I don’t know how to
answer that.

      On cross-examination, Sesters testified that he had a step-daughter who was the same age as
E.T. The State asked Sesters what should happen to a person who raped his step-daughter. 
Sesters responded that he was “very against [rape]” and thought “it’s very wrong.” Again,
Smith’s counsel did not object.
      Finally, after the defense rested, the State recalled the victim. On redirect examination, the
State asked E.T. the following, without objection:
Q. What do you think an appropriate punishment would be?
 
A. The max.

      Smith contends that the State’s inquiry into an appropriate punishment from the character
witnesses and the victim was irrelevant and invaded the province of the jury. The State responds
that although this evidence is normally inadmissible, Smith “opened the door” to this evidence by
virtue of his own questions to his character witnesses and through his own testimony in which he
requested probation. 

      A defendant’s “suitability” for probation, or his ability to abide by its terms and conditions,
is not at issue in the punishment phase of a trial. Griffin v. State, 787 S.W.2d 63, 67 (Tex. Crim.
App. 1990); Bell v. State, 948 S.W.2d 535, 539 (Tex. App.—Beaumont 1997, no pet.). 
Nevertheless, parties may “open the door,” in effect agreeing to make “suitability” for probation
a consideration for the jury. Griffin, 787 S.W.2d at 67.
      As in Griffin, Smith’s counsel tendered two witnesses who indicated that Smith should be a
candidate for probation. See id. In addition, Smith testified that he could abide by its terms and
conditions. See id. By these actions, Smith placed his “suitability” for probation at issue. See
id. We find that Smith’s counsel’s performance was perhaps deficient for “opening the door” to
such testimony. However it was not deficient for failing to object to testimony he invited.
       3.   Failed to object to numerous improper unlawful jury arguments by the State.  
      Smith claims his counsel was ineffective in failing to object to improper jury argument which:
(a) asked the jury to consider how parole would affect his sentence, (b) made an improper plea of
law enforcement, (c) made a direct reference to his post-Miranda silence, and (d) asked the jurors
to place themselves in the shoes of the victim.
      Jury arguments are proper if they fall within the following four categories: (1) summation of
the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing
counsel, and (4) plea for law enforcement. Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim.
App. 1997). Error results from improper jury argument only if, examined in light of the entire
record, the argument is extreme, manifestly improper, injects new and harmful facts into the case,
or violates a mandatory statutory provision. Kelly v. State, 18 S.W.3d 239, 244 (Tex.
App.—Amarillo 1991, no pet.). Remarks of counsel must be considered within the context in
which they appear. Id.
      a. Failed to object to an argument which asked the jury to consider how parole
would affect Smith’s sentence.

      During the State’s closing argument, the following comments were made:
There’s a charge on parole law here, too. And it basically says the defendant is
eligible to get good-conduct time awarded in prison that might affect the term of his
release. But in this type of crime, he will have to serve, before eligible for parole, one-half of his term, or a minimum of two years.
 
Basically, what that means is that if you give him a two-year sentence, he’s going
to serve two; if you give him a three-year sentence, he’s going to have to serve three; if
you give him a four-year sentence - - I mean - - he’s going to have to serve two; if you
give him a four-year sentence, he’ll serve two, see, because that’s 50 percent. And
anything over that he would only have - - he would have to serve minimum of two years,
and then he would be eligible for parole, after 50 percent.
 
So six years, he would be eligible at three years, so on and so fourth, up to the
maximum of 20 years. And 50 percent of that would be ten years. So ten years is the
maximum that can be guaranteed to anyone charged with this crime, can be incarcerated,
because of parole law. Doesn’t mean he won’t spend more time, but that’s something
you, as a jury, are not supposed to consider. 

      Smith claims he was denied effective assistance because his counsel did not object to the
prosecution’s argument which invited the jury to consider parole in assessing his punishment. We
have previously addressed whether a similar argument was improper. See Perez v. State, 994
S.W.2d 233, 236-37 (Tex. App.—Waco 1999, no pet.). In Perez, we stated:
It is acceptable to quote or paraphrase the court’s charge to the jury. Whiting v. State,
797 S.W.2d 45, 48 (Tex. Crim. App. 1990); Jones v. State, 641 S.W.2d 545, 550 (Tex.
Crim. App. 1982); Clay v. State, 741 S.W.2d 209, 210 (Tex. App.—Dallas 1987, pet.
ref’d). This includes explaining or paraphrasing the parole law found in the charge. 
Jones, 641 S.W.2d at 550. Nevertheless, a thin line separates ‘paraphrasing’ and
‘applying’ parole law to a particular defendant.

Id.
      Article 37.07, section 4(a) of the Code of Criminal Procedure expressly prohibits a jury from
considering parole eligibility for the defendant on trial. Specifically, the jury is charged: “You
may consider the existence of the parole law and good conduct time. However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited by this particular
defendant. You are not to consider the manner in which the parole law may be applied to this
particular defendant.” Tex. Code Crim. Proc. Ann. art. 37.07, § (4)(a). Consequently, in
Perez, we held it is improper for a prosecutor to apply the law to the defendant on trial during jury
argument. Perez, 994 S.W.2d at 237. 
       In Perez, the prosecutor explained the parole laws and then explained to the jury how parole
would be applied to the defendant. Id. He said, “anything you give him over 60 years, he’s
eligible for parole after 30 years.” Id. He further encouraged the jury to “set the proper
sentence” based on this information. Id. We found this argument encouraged the jury to consider
the effects of parole on Perez’s punishment and therefore was improper. Id.
       Similarly, here the prosecutor began by stating, “There’s a charge on parole law here, too. 
And it basically says the defendant is eligible to get good-conduct time awarded in prison that
might affect the term of his release.” The prosecutor then continued to make references to Smith



throughout his explanation of parole law and explained how it would be applied to Smith. We
likewise find this argument encouraged the jury to consider the effects of parole on Smith’s
punishment. Therefore, the argument violated a mandatory statutory provision and was improper. 
Kelly, 18 S.W.3d at 244. Smith’s counsel was deficient in failing to object to such argument.
b. Failed to object to an argument which constituted an improper plea for law
enforcement.

      The complained-of argument is as follows:
You pay my wages through taxes, and pay the judge’s and pay law-enforcement people. 
And we need to know what you think is the appropriate type of punishment for this type
of crime. If you think probation is appropriate for rape of a 14-year-old, then I don’t
need to come here and bother the next 50 people or 100 people that get called in, because
they’ll jump through a hoop, if I want to work out a probation sentence on this. You
know, we can stop all this stuff.
 
But I like to think that this community and other communities take a little bit dimmer
view of that.

      Smith contends the above argument was improper, because it implied that the community
expects the jury not to give Smith probation. Although a jury argument that the community
expects, demands, or desires a particular result is improper, a prosecutor may address the jurors
as representatives, spokesmen, and even the conscience of the community. Barcenes v. State, 940
S.W.2d 739, 749 (Tex. App.—San Antonio 1997, pet. ref’d) (citing Cortez v. State, 683 S.W.2d
419, 420 (Tex. Crim. App. 1984)). 
      We believe Smith has mischaracterized the prosecutor's argument as an improper appeal to
community desires. The prosecutor’s statement that “this community and other communities take
a little bit dimmer view” on whether probation was appropriate in this instance, merely asked the
jury to be the voice of the community, which is a proper plea for law enforcement. See Boston
v. State, 965 S.W.2d 546, 548-49 (Tex. App.—Houston [1st Dist.] 1997, no pet.). We find
Smith’s counsel was reasonable in not objecting in this instance.
      c. Failed to object to improper cross-examination and improper argument which
made a direct reference to Smith’s post-Miranda silence.

      On cross-examination, the State asked Smith the following:
Q. In fact, you hadn’t admitted it to anybody, but your lawyer, until yesterday when you
walked in this courtroom and entered your plea of guilty. Had you?
 
A. Yes, sir.

(Italics added). Then during its closing argument, the prosecutor stated:
 
And what does the evidence show on cross-examination? Until, yesterday morning,
in front of this jury, on a rape that occurred four years ago, he has never once admitted
to having done it, other than to maybe his attorney. Came here to see me on
arraignment, and blubbered to me how it was a con deal, how he didn’t do it, never
touched her, never laid a hand on her.

(Italics added).
      Smith argues his counsel was deficient in failing to object to the above italicized portions
because in both the State made references to his post-Miranda “silence.” The State contends the
prosecutor’s statements were proper because Smith made statements before trial which were
inconsistent with his position at trial.
      We agree with the State. A defendant does not have the right to testify free from
impeachment. Lopez v. State, 990 S.W.2d 770, 776-77 (Tex. App.—Austin 1999, no pet.). A
criminal defendant who takes the stand is subject to the same rules as any other witness and may
be impeached, contradicted, made to give evidence against himself or herself, cross-examined on
new matters, and treated in every respect as any other witness, except where there are overriding
constitutional or statutory provisions. Id. at 777 (citing Sanchez v. State, 707 S.W.2d 575, 577
(Tex. Crim. App. 1986)).
      The Fifth Amendment guarantees an accused the right to remain silent and prevents the
prosecution from commenting on the defendant's exercise of that right. Doyle v. Ohio, 426 U.S.
610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); Fuentes v. State, 991 S.W.2d 267, 274
(Tex. Crim. App. 1999). However, Smith was not silent.
      Smith voluntarily took the stand after pleading guilty to the offense and attempted to mitigate
his culpability by testifying that E.T. came into his bedroom while he was asleep and got on top
of him. Smith stated that he thought E.T. was his wife when they had intercourse. However, on
cross-examination Smith admitted that after he was arrested he told the prosecutor that he and E.T.
had never had intercourse. Consequently, Smith had previously made statements which now were
inconsistent with his position at trial. We find the State was merely commenting on Smith’s
credibility due to his prior inconsistent statements, and therefore, was not commenting on his post-Miranda silence.
      d. Failed to object to an improper argument which asked the jurors to place
themselves in the shoes of the victim.
 
Smith claims the following argument by the prosecutor was improper:
Ladies and gentlemen, especially you men. We cannot - - men, we cannot
comprehend. You and I do not have the ability to comprehend the damage he did to
[E.T.]. We don’t have that ability. We’re not built like that, not mentally and not
physically. We can’t have someone penetrate us. I guess an example would be
somebody raping you men on anal intercourse, actually penetrate into your body, invade
your body; to not just invade your body, but invade your mind.

      Later, the prosecutor stated:
 
Twenty years? I don’t know. You know, it’s not me. If it was mine, I know what
I’d want: 20 years wouldn’t be enough. If it was yours, 20 years wouldn’t be enough. 


      Smith claims his counsel was deficient in not objecting when the prosecutor asked the jurors
to place themselves in the shoes of the victim. The State responds that the prosecutor was making
a plea for law enforcement.
      Generally, it is improper argument for a prosecutor to ask members of the jury to place
themselves in the shoes of the victim. Chandler v. State, 689 S.W.2d 332, 334 (Tex. App.—Fort
Worth 1985, pet. ref'd). In Brandley v. State, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985), the
prosecutor argued, “it is fair for you to think about how you would feel if you lost your children.” 
The Court of Criminal Appeals concluded that the argument was improper because it asked the
jurors to abandon their objectivity. Id. In Boyington v. State, 738 S.W.2d 704, 709 (Tex.
App.—Houston [1st Dist.] 1985, no pet.), the Houston Court held that the prosecutor's lengthy
and unchallenged argument inviting the jurors to put themselves in the place of a family that was
firebombed was improper. 
      Here, the prosecutor’s remarks were likewise objectionable. See Brandley, 691 S.W.2d at
712; Boyington, 738 S.W.2d at 709. The State placed the jurors in the victim’s shoes by telling
the male jurors to imagine themselves being raped, and by asking the whole jury to consider their
own daughters when assessing Smith’s punishment. See id. We find Smith’s counsel was
deficient in not objecting to this argument.
C.  Prejudice
      Having found that Smith’s counsel’s performance was deficient: 1) in eliciting extraneous
offense testimony, and 2) by failing to object to improper jury arguments which asked the jury to
consider how parole would affect Smith’s sentence and to place themselves in the shoes of the
victim, we will next determine whether this deficient performance prejudiced him. In other
words, whether there is a reasonable probability that the jury’s assessment of Smith’s punishment
would have been less severe in the absence of such deficient performance.
      Fourteen-year-old E.T., the victim, testified that Smith, her step-father, forced her to have
sex with him. E.T. became pregnant as a result. E.T. also testified as to how the sexual assault
and resulting birth of her son had influenced her ability to have a normal life as a young teenage
girl. Smith testified in his own behalf. Smith attempted to mitigate his culpability by claiming
that E.T. came into his room while he was asleep and got on top of him. Smith then stated that
he thought it was his wife when he had intercourse with her. On cross-examination, Smith
admitted that when he was arrested he denied the charges. He also acknowledged that the only
reason he entered a plea of guilty was because DNA blood tests had proven he was the father of
E.T.’s child. Smith further admitted that he had not supported E.T.’s now three-year-old child
in any manner up to and including the time of trial.
      Sexual assault is a felony of the second degree, which carries a range of punishment of two
to twenty years. Tex. Pen. Code Ann. § 12.33(a) (Vernon 1994), § 22.011(f) (Vernon Supp.
2001). The jury assessed Smith’s punishment at fifteen years’s confinement. Based upon the
evidence of Smith’s crime, we do not find a reasonable probability that the jury’s assessment of
his punishment would have been less severe in the absence of the deficiencies in his trial counsel’s
performance. Therefore, Smith was not prejudiced.
CONCLUSION
      Because we find Smith’s counsel’s performance did not prejudice him, Smith did not prove
by a preponderance of evidence that he was denied effective assistance of counsel. As a result,
we affirm his conviction.
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
          (Justice Gray concurring)
Affirmed
Opinion delivered and filed March 14, 2001
Do not publish